UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

SOUTH WIND WOMEN'S CENTER )
LLC, d/b/a TRUST WOMEN )
OKLAHOMA CITY, on behalf of itself, )
its physicians and staff, and its patients, )
et al., )
 )
    Plaintiffs, )
 )
v. ) Case No. CIV-20-277-G
 )
J. KEVIN STITT in his official capacity )
as Governor of Oklahoma et al., )
 )
    Defendants. )

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiffs'[1] Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 16). Defendants[2] have filed a Response (Doc. No. 54). In addition, an Amicus Brief (Doc. No. 59) has been filed in support of the State of Oklahoma by a group of sixteen states. The Court has considered the affidavits and documentary evidence submitted with the Motion and the Response. Further, the Court

---

[1] Plaintiffs are: South Wind Women's Center LLC, d/b/a Trust Women Oklahoma City, on behalf of itself, its physicians and staff, and its patients; Larry A. Burns, DO, on behalf of himself, his staff, and his patients; and Comprehensive Health of Planned Parenthood Great Plains, Inc., on behalf of itself, its physicians and staff, and its patients. The Supreme Court has held that abortion providers have standing to raise constitutional challenges on behalf of their patients. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 118 (1976) (plurality op.).

[2] Defendants are: J. Kevin Stitt in his official capacity as Governor of Oklahoma; Michael Hunter in his official capacity as Attorney General of Oklahoma; David Prater in his official capacity as District Attorney for Oklahoma County; Greg Mashburn in his official capacity as District Attorney for Cleveland County; Gary Cox in his official capacity as Oklahoma Commissioner of Health; and Mark Gower in his official capacity as Director of the Oklahoma Department of Emergency Management.

held a telephonic hearing on April 3, 2020, with counsel for both parties and for the referenced amici appearing.

This case raises an issue that has long been a source of struggle for the courts: the proper use of the judicial power in reviewing laws and executive orders or actions taken in response to a public health emergency. There is no dispute that the State of Oklahoma—like governments across the globe—is facing a health crisis in the COVID-19 pandemic that requires, and will continue for an indeterminate time to require, emergency measures. In this effort to secure the health and safety of the public, the State has broad power to act and even, temporarily, impose requirements that intrude upon the liberty of its citizens. "[T]he rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Jacobson v. Massachusetts*, 197 U.S. 11, 29 (1905). That power is not unfettered, however, and courts should carefully guard against "unreasonable," "arbitrary," or "oppressive" exercises of it. *Id.* at 27, 38; *see also id.* at 31 (explaining that police power is improperly used when "the means prescribed by the state . . . has no real or substantial relation to the protection of the public health and the public safety"). In doing so, a court should not merely substitute its opinion for that of the officers tasked with responding to the emergency, *see id.* at 26, 30, but neither should the court sanction "a plain, palpable invasion of rights," *id.* at 31.

The right at issue here is access to abortion. Again, the parties do not dispute—for purposes of this action, at least—that the Fourteenth Amendment to the United States Constitution shields a woman's right of access to abortion, prior to viability of the fetus,

from any "undue burden" caused by state regulation. *See Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2310 (2016) ("[T]he standard that this Court laid out in [*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992) (plurality op.),] . . . asks courts to consider whether any burden imposed on abortion access is 'undue.'"). In applying *Casey*'s undue burden rule, courts must "consider the burdens a law imposes on abortion access together with the benefits those laws confer." *Id.* at 2309. Plaintiffs contend that executive orders issued by the Governor of Oklahoma impose a complete ban on nonemergency abortion procedures in the State of Oklahoma, violating the Fourteenth Amendment's guarantees of due process and equal protection. *See* Compl. ¶¶ 65-70 (Doc. No. 1).

As set forth below, the Court concludes that while the current public health emergency allows the State of Oklahoma to impose some of the cited measures *delaying* abortion procedures, it has acted in an "unreasonable," "arbitrary," and "oppressive" way—and imposed an "undue burden" on abortion access—in imposing requirements that effectively *deny* a right of access to abortion. Further, the Court concludes that the benefit to public health of the ban on medication abortions is minor and outweighed by the intrusion on Fourteenth Amendment rights caused by that ban.

I.

Upon careful consideration of the evidence and argument submitted by the parties, the Court makes the following findings of fact:

1. On March 24, 2020, the Governor of Oklahoma issued an Executive Order declaring that as part of the State of Oklahoma's "measures to protect all Oklahomans

3

against" the threat of the coronavirus known as COVID-19 ("COVID-19"), "Oklahomans and medical providers in Oklahoma shall postpone all elective surgeries, minor medical procedures, and non-emergency dental procedures until April 7, 2020." Compl. ¶¶ 1-2; *id.* Ex. 1, Fourth Am. Exec. Order ¶ 18 (No. 2020-07 (Doc. No. 1-1)).

2.     Generally, the Executive Order does not specify which surgeries and procedures fall within Paragraph 18's prohibition against elective surgeries and minor medical procedures or prescribe how that determination is to be made. *See* Fourth Am. Exec. Order ¶ 18. The Court must presume that those classifications are being decided on a case-by-case basis by medical providers. As to abortion procedures, however, the Governor on March 27, 2020, stated in a Press Release that the postponement referenced in the Executive Order applies to "any type of abortion services as defined in 63 O.S. § 1-730(A)(1) [that] are not a medical emergency as defined in 63 O.S. § 1-738.1[A] or otherwise necessary to prevent serious health risks to the unborn child's mother." *Id.* Ex. 2, Press Release at 1 (Doc. No. 1-2).[3]

3.     On April 1, 2020, the Governor amended the prior Executive Order by extending the postponement of elective surgeries and minor medical procedures "until April 30, 2020." Pls.' Notice Ex. 1, Seventh Am. Exec. Order ¶ 18 (Doc. No. 38-1). The

---

[3] Title 63, section 1-738.1A(5) of the Oklahoma Statutes provides that a "medical emergency" "means the existence of any physical condition, not including any emotional, psychological, or mental condition, which a reasonably prudent physician, with knowledge of the case and treatment possibilities with respect to the medical conditions involved, would determine necessitates the immediate abortion of the pregnancy of the female to avert her death or to avert substantial and irreversible impairment of a major bodily function arising from continued pregnancy."

April 1, 2020 amendment also declared a state of emergency in all 77 counties in Oklahoma "caused by the impending threat of COVID-19 to the people of this State and the public's peace, health, and safety." *Id.* ¶ 1.

4.   In Oklahoma, nonemergency abortions are prohibited when "the probable postfertilization age of the woman's unborn child is twenty (20) or more weeks." Okla. Stat. tit. 63, § 1-745.5(A).

5.   Although each Plaintiff's services vary, one or more of them provide abortion through administration of two pills ("medication" or "chemical" abortion) up to 10 or 11 weeks from the pregnant person's last menstrual period (i.e., eight or nine weeks postfertilization) and provide abortion through cervical suction ("procedural" or "surgical" abortion) up to 21.6 weeks from the last menstrual period (i.e., 19.6 weeks postfertilization). *See* Pls.' Mot. at 13-15; *id.* Ex. 5, Burns Decl. ¶ 11 (Doc. No. 16-5); *id.* Ex. 6, Burkhart Decl. ¶ 2 (Doc. No. 16-6); *id.* Ex. 7, Hill Decl. ¶ 8 (Doc. No. 16-7).

6.   The effect of the Executive Order and Press Release is to prevent abortion providers statewide from lawfully performing either type of abortion—except as necessary "to avert [the pregnant person's] death or to avert substantial and irreversible impairment of a major bodily function [of the pregnant person] arising from continued pregnancy" or to "otherwise . . . prevent serious health risks to" the pregnant person, Okla. Stat. tit. 63, § 1-738.1A; Press Release at 1—until April 30, 2020. Defendants acknowledge that this prohibition may be extended beyond that date due to the ongoing severity of the COVID-19 pandemic.

7. The stated purpose and benefit of the Executive Order and Press Release—and specifically the requirement in Paragraph 18 of the Executive Order that "Oklahomans and medical providers in Oklahoma . . . postpone all elective surgeries, minor medical procedures, and non-emergency dental procedures"—is to protect the public's health by preventing "(1) close interpersonal contact [in order to slow the rate of spread of the virus], (2) depletion of medical PPE [personal protective equipment], and (3) activities that will increase the use of hospital beds, staff, and other resources." Defs.' Resp. at 26-27; *see also id.* at 23-38.

8. Absent travel to another state, the postponement directed by the Executive Order and Press Release would require at least some pregnant persons in Oklahoma who would be eligible for a medication abortion to instead obtain a more invasive surgical abortion. Pls.' Mot. Ex. 4, Schivone Decl. ¶¶ 31-32 (Doc. No. 16-4). Further, this postponement would effectively eliminate the ability of some pregnant persons in Oklahoma who are presently able to obtain a medication abortion, but for whom the surgical option is medically contraindicated, to obtain an abortion at all.

9. Absent travel to another state, the postponement directed by the Executive Order and Press Release would effectively eliminate the ability of persons in Oklahoma who would reach their last eligible date under Oklahoma law—specifically, the date when "the probable postfertilization age of the woman's unborn child is twenty (20) or more weeks," Okla. Stat. tit. 63, § 1-745.5(A)—prior to April 30, 2020, to obtain an abortion.

10. While the parties dispute the amount of interpersonal contact and PPE required by a medication abortion, as well as the typical percentage of complications resulting in

hospitalization resulting from that procedure, in each instance it is less than what is required by or typically results from a surgical abortion.

## II.

As explained by the Tenth Circuit,

> Ordinarily, a movant seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal.

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001) (citation omitted). These four requirements apply equally to a request for a temporary restraining order (or "TRO"). *See Wiechmann v. Ritter*, 44 F. App'x 346, 347 (10th Cir. 2002); *United States v. Terry*, No. CIV-19-250-SLP, 2019 WL 7753271, at *1 (W.D. Okla. Mar. 26, 2019).[4]

### A. *Substantial Likelihood of Success on the Merits*

The Court has considered the potential for success of Plaintiff's claims under both *Jacobson*'s standard for permissible state action during a public health emergency and

---

[4] Defendants contend that Plaintiffs must "satisfy a heightened standard" because they are seeking relief that is "disfavored" due to "afford[ing] [Plaintiffs] all the relief that [they] could recover at the conclusion of a full trial on the merits." *Fish v. Kobach*, 840 F.3d 710, 723-24 (10th Cir. 2016) (internal quotation marks omitted); *see* Defs.' Resp. at 22. Even assuming the heightened standard applies, Plaintiffs meet that standard for the reasons outlined below.

*Casey*'s undue-burden analysis. Plaintiffs have established a substantial likelihood of success on the merits.[5]

With respect to surgical abortion, the effect of the Executive Order and Press Release in some instances is to require a pregnant woman to temporarily delay such surgery. As noted, in Oklahoma nonemergency abortions are prohibited when "the probable postfertilization age of the woman's unborn child is twenty (20) or more weeks." Okla. Stat. tit. 63, § 1-745.5(A). Thus, a woman for whom the probable postfertilization age of her unborn child was 11 weeks on March 24, 2020, would remain able to obtain a surgical abortion on April 30, 2020. Giving deference to the state executive as the primary arbiter of what steps are necessary in that area to stop the spread of COVID-19, and to ration resources needed to treat patients infected with that virus, the Court concludes that this type of temporary delay is a permissible use of state power in a health emergency. Further, upon "consider[ing] the burdens a law imposes on abortion access together with the benefits those laws confer," *Hellerstedt*, 136 S. Ct. at 2309, the Court concludes that

---

[5] Three other federal district courts have found that such a previability ban on abortion premised upon COVID-19 concerns is inconsistent with Supreme Court precedent, including *Casey*, and that abortion providers have a substantial likelihood of success on their claim that such an executive order is unlawful. *See Robinson v. Marshall*, No. 2:19cv365-MHT, 2020 WL 1520243, at *2 (M.D. Ala. Mar. 30, 2020), *appeal dismissed*, No. 20-11270 (11th Cir. Apr. 4, 2020); *Preterm-Cleveland v. Att'y Gen. of Ohio*, No. 1:19-cv-00360 (S.D. Ohio Mar. 30, 2020), *stay denied and appeal dismissed*, No. 20-3365 (6th Cir. Apr. 6, 2020); *Planned Parenthood Ctr. for Choice v. Abbott*, No. A-20-CV-323-LY, 2020 WL 1502102, at *2 (W.D. Tex. Mar. 30, 2020), *temporary stay entered*, No. 20-50264 (5th Cir. Mar. 31, 2020).

the benefit of emergency action during this great public health crisis justifies such a temporary delay of access to abortion services.[6]

In other instances, however, the effect of the Executive Order and Press Release is to prevent access to surgical abortion altogether. As acknowledged by Defendants during the April 3, 2020 hearing, a woman for whom the probable postfertilization age of her unborn child was 16 weeks on March 24, 2020, would, on April 30, 2020, lie beyond the 20-week limit of title 63, section 1-745.5(A), and at that point would not be able to obtain an abortion in the State of Oklahoma at all. This effective denial of the Fourteenth Amendment right to abortion access represents the type of "plain, palpable invasion of rights" identified in *Jacobson* as beyond the reach of even the considerable powers allotted to a state in a public health emergency. *Jacobson*, 197 U.S. at 31. As such, the Executive

---

[6] In making this determination, the Court accepts and assumes that the holdings in *Casey* and its progeny would require consideration of the state's interest of protection of public health from a pandemic—rather than the more typical considerations of the state's interests in protecting the mother's and unborn child's health—as part of the analysis of the respective burdens and benefits of a restriction on abortion. Absent this assumption, it is even more plain that Plaintiffs are likely to succeed on the merits. The Supreme Court in *Casey* explained that "a statute which, while furthering . . . [a] valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice," is invalid. *Casey*, 505 U.S. at 877. Further, though the state "may enact regulations to further the health or safety of a woman seeking an abortion," the state may not impose "[u]necessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion." *Id.* at 878. If *Casey* is read to speak to any exercise of state interest, including emergency action to avert a public health crisis, it would be clear that restrictions on abortion services of the kind reflected in the Executive Order and Press Release constitute a substantial obstacle to abortion access and, therefore, are invalid. So held the U.S. District Court for the Western District of Texas. *See Planned Parenthood Ctr. for Choice*, 2020 WL 1502102, at *3 ("This court will not speculate on whether the Supreme Court included a silent 'except-in-a-national-emergency clause' in its previous writings on the issue. Only the Supreme Court may restrict the breadth of its rulings. The court will not predict what the Supreme Court will do if this case reaches that Court.").

Order and Press Release are, in this respect, invalid as an "unreasonable," "arbitrary," and "oppressive" use of the State's emergency powers and as an "undue burden" on the constitutional rights of Plaintiffs' patients.

With respect to medication abortion, the Court likewise concludes that it is substantially likely that Plaintiffs will establish that the prohibition reflected in the Executive Order and Press Release is invalid as an "unreasonable," "arbitrary," and "oppressive" use of the State's emergency powers and as an "undue burden" on the right of Plaintiffs' patients to access abortion services. The evidence reflects that this procedure is safer and requires less interpersonal contact and PPE than surgical abortion. As a result, upon concluding as set forth above that some amount of surgical abortions must be allowed, it follows that the purpose and benefit that Defendants state they are trying to achieve through the Executive Order and Press Release—preventing "(1) close interpersonal contact, (2) depletion of medical PPE, and (3) activities that will increase the use of hospital beds, staff, and other resources," Defs.' Resp. at 26-27—are not advanced by prohibiting medication abortion. As an example, delay of medication abortion for a woman with an unborn child nearing nine weeks postfertilization (the latest date when Plaintiff medical providers will administer drugs for a medication abortion) will limit that person's ability to access abortion within the State of Oklahoma to the surgical option, a procedure that will divert more medical resources than medication abortion.[7] And, while administration of medication abortion will

---

[7] For such a woman, if surgical abortion is contraindicated the delay occasioned by the Executive Order and Press Release would constitute a complete denial of access to abortion services.

require some amount of close interpersonal contact, that amount will be small and not dissimilar from the close interpersonal contact the State has allowed in other contexts. This disconnect between the means employed and the benefits achieved indicates that the prohibition on medication abortion is improper under both the *Jacobson* and *Casey* standards of review. *See Jacobson*, 197 U.S. at 31 (explaining that police power is improperly used when "the means prescribed by the state . . . has no real or substantial relation to the protection of the public health and the public safety").

In sum, Plaintiffs have established a substantial likelihood of success on the merits of their claim that the Executive Order, as applied to abortion services by the Press Release, violates Plaintiffs' patients' constitutional rights under the Fourteenth Amendment.[8]

### B. Irreparable Injury Absent Injunctive Relief

Plaintiffs here have demonstrated imminent, irreparable harm absent entry of injunctive relief, as their patients will be substantially delayed in or prevented from exercising their right to abortion access. *See Free the Nipple-Fort Collins v. City of Fort*

---

[8] The Court notes that the U.S. District Court for the Middle District of Alabama, which granted a TRO preventing enforcement of a similar executive order, has now issued an Opinion and Order stating that it would elect to revise its previous ruling, based upon the state's clarification that the challenged executive order "allows providers, exercising their reasonable medical judgment, to protect the right to terminate a pregnancy and the safety of their patients" by allowing abortions to "be performed without delay" on a case-by-case basis if the provider determines that "a patient will lose her right to lawfully seek an abortion in Alabama based on the . . . mandatory delays" or if the abortion cannot be delayed beyond the expiration of the executive order "in a healthy way." *Robinson*, Op. & Order of Apr. 3, 2020, at 11-13 (Doc. No. 65-1); *see also id.* at 11 (noting that the clarified TRO "recognizes that abortion providers and their patients" "must adapt to the exigent circumstances caused by the global pandemic"). The Executive Order and Press Release at issue here contain no exception for delay-based harm.

*Collins*, 916 F.3d 792, 805 (10th Cir. 2019) ("Most courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury."); Pls.' Mot. at 30-32; *id.* Ex. 4, Schivone Decl. ¶¶ 28-33, 37.  Further, "[a] plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite*, 269 F.3d at 1156; *cf. Planned Parenthood of Kan. & Mid-Mo. v. Andersen*, 882 F.3d 1205, 1236 (10th Cir. 2018) ("A disruption or denial of these patients' health care cannot be undone after a trial on the merits." (internal quotation marks omitted)).

### C. *The Balance of Hardships and the Effect of an Injunction on the Public*

Given the nature of the State's interest in issuing the Executive Order and Press Release, namely the protection of public health, the final two considerations for a temporary restraining order are merged.  As detailed above, Plaintiffs have demonstrated that the injury that will be suffered as a result of delaying abortion access to a woman with an unborn child nearing 20 weeks postfertilization is a complete denial, to those patients, of the Fourteenth Amendment right to access abortion.  That plain and palpable deprivation of a fundamental right outweighs the injury the public may suffer if those procedures are allowed to occur. Further, as detailed above, Plaintiffs have demonstrated that the benefit to the public achieved by prohibiting medication abortions is relatively minor, at least when it is assumed that some surgical abortions must be allowed and the denial of all medication abortions will result in an increase in surgical abortions.  That benefit is outweighed by the

harm that will be suffered from the intrusion upon Fourteenth Amendment rights caused by a prohibition on medication abortions.

## CONCLUSION

To the extent Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 16) seeks a temporary restraining order, the Motion is GRANTED IN PART. To the extent the Motion seeks a preliminary injunction, it is HELD IN ABEYANCE.

Specifically, it is hereby ORDERED that Defendants and their employees, agents, attorneys, successors, and all others acting in concert or participating with them are TEMPORARILY RESTRAINED from enforcing Governor J. Kevin Stitt's Seventh Amended Executive Order No. 2020-07 of April 1, 2020, and the March 27, 2020 Press Release against Oklahoma abortion providers, clinics, and their staff, to the following extent:

1. The prohibition on surgical abortions may not be enforced with respect to any patient who will lose her right to lawfully obtain an abortion in Oklahoma on or before the date of expiration of the Executive Order; and

2. The prohibition on medication abortions may not be enforced.

This Temporary Restraining Order is effective upon entry and shall expire on April 20, 2020, at 11:59 p.m., unless extended by the Court for good cause shown or by agreement of the parties.

It is further ordered that the security requirement of Federal Rule of Civil Procedure 65(c) is waived.

IT IS SO ORDERED this 6th day of April, 2020.

_____
CHARLES B. GOODWIN
United States District Judge