## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SOUTH WIND WOMEN'S CENTER )
LLC, d/b/a TRUST WOMEN OKLAHOMA )
CITY, on behalf of itself, its physicians and )
staff, and its patients; LARRY A. BURNS, D.O., )
on behalf of himself, his staff, and his patients; )
and COMPREHENSIVE HEALTH OF PLANNED )
PARENTHOOD GREAT PLAINS, INC., on behalf )   No.  CIV-20-277-G
of itself, its physicians and staff, and its )
patients, )
 )
                Plaintiffs, )
  v. )
 )
J. KEVIN STITT in his official capacity as )
Governor of Oklahoma; MICHAEL HUNTER in )
his official capacity as Attorney General of )
Oklahoma; DAVID PRATER in his official )
capacity as District Attorney for Oklahoma )
County; GREG MASHBURN in his official )
capacity as District Attorney for Cleveland )
County; GARY COX in his official capacity as )
Oklahoma Commissioner of Health; and )
MARK GOWER in his official capacity as )
Director of the Oklahoma Department of )
Emergency Management, )
 )
               Defendants.

## PLAINTIFFS' RESPONSE TO THE BRIEFS OF AMICI CURIAE OPPOSING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

    A.   The Police Power is Not Absolute in a Pandemic ................................................... 2

    B.   Courts Must Safeguard Constitutional Rights Even During a Crisis ....................... 4

    C.   Oklahoma Has Not Treated Abortion Evenhandedly .............................................. 6

# TABLE OF AUTHORITIES

## CASES

*Anaya v. Crossroads Managed Care Sys.*,
195 F.3d 584 (10th Cir. 1999) ...................................................................... 4

*Burns v. Cline*,
2016 OK 121, 387 P.3d 348.......................................................................... 8

*Cruzan v. Dir., Mo. Dep't of Health*,
497 U.S. 261 (1990).................................................................................... 2

*In re Abbott*,
No. 20-50264 (5th Cir. Apr. 7, 2020) ......................................................... 6

*In re Cincinnati Radiation Litig.*,
874 F. Supp. 796 (S.D. Ohio 1995) ............................................................ 3

*Jacobson v. Massachusetts*,
197 U.S. 11 (1905).............................................................................passim

*Jew Ho v. Williamson*,
103 F. 10 (C.C.N.D. Cal. 1900) .................................................................. 9

*Kennedy v. Mendoza-Martinez*,
372 U.S. 144 (1963).................................................................................... 4

*Lawton v. Steele*,
152 U.S. 133 (1894)........................................................................... 4, 6, 9

*Mid Gulf, Inc. v. Bishop*,
792 F. Supp. 1205 (D. Kan. 1992) .............................................................. 5

*Okla. Coal. for Reprod. Justice v. Cline*,
2019 OK 33, 441 P.3d 1145......................................................................... 8

*Planned Parenthood of Southeastern Pennsylvania v. Casey*,
505 U.S. 833 (1992).............................................................................passim

*Schmerber v. Cal.*,
384 U.S. 757 (1966).................................................................................... 3

*Whole Woman's Health v. Hellerstedt*,
136 S. Ct. 2292 (2016) ................................................................................ 5

STATUTES

63 O.S. § 1-729.1 .................................................................................................. 7

63 O.S. § 1-738.2(B) ........................................................................................... 7

63 O.S. § 1-741.1(A) ........................................................................................... 7

REGULATIONS AND OTHER AUTHORITIES

Associated Press, *Oklahoma House OKs Bill to Suspend Abortion Doctor
    Licenses*, U.S. News & World Report (Feb. 6, 2020),
    https://www.usnews.com/news/best-states/oklahoma/articles/2020-02-
    06/oklahoma-house-oks-bill-to-suspend-abortion-doctor-licenses .............................. 8

Associated Press, *Oklahoma Senate Votes to Ban Abortions After 6 Weeks*,
    U.S. News & World Report (Mar. 12, 2020),
    https://www.usnews.com/news/best-states/oklahoma/articles/2020-03-
    12/oklahoma-senate-votes-to-ban-abortions-after-6-weeks .......................................... 8

O.A.C. §§ 310:600 .............................................................................................. 7

Office of the Gov. J. Kevin Stitt, Executive Department Fourth Amended
    Executive Order 2020-07 (Mar. 24, 2020),
    https://www.sos.ok.gov/documents/executive/1919.pdf ............................................ 7

Office of the Gov. J. Kevin Stitt, Governor Stitt Clarifies Elective Surgeries
    and Procedures Suspended Under Executive Order (Mar. 27, 2020),
    https://www.governor.ok.gov/articles/press_releases/governor-stitt-
    clarifies-elective-surgeries ................................................................................. 6, 7

Plaintiffs submit this response to the briefs filed in opposition to Plaintiffs' motion for a preliminary injunction by amici curiae the State of Alabama et al. (ECF No. 59) ("Alabama Br."), Forty-Eight Members of the Oklahoma Senate and Oklahoma House of Representatives and the American Center for Law and Justice (ECF No. 68) ("ACLJ Br."), and the Roman Catholic Diocese of Tulsa et al. (ECF No. 76) ("Diocese Br.").

## INTRODUCTION

This Court's April 6 Temporary Restraining Order ("TRO") carefully considered the State of Oklahoma's interest in stopping the spread of COVID-19 and the right of Oklahomans to terminate a pre-viability pregnancy as guaranteed by the Constitution of the United States.  In doing so, the Court applied the proper legal framework under both *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992).

Amici's arguments are at odds with this Court's considered legal conclusions and are not faithful to *Jacobson* or *Casey*.  Amici stress that the state's police power is at its strongest in a public-health emergency, but they fail to acknowledge the Supreme Court's holdings that a state may not disregard constitutional rights, even in the name of protecting the public.  In fact, the Supreme Court has repeatedly emphasized that courts have a duty to stop unconstitutional incursions on rights, even during a crisis.  Amici are also wrong to suggest that Oklahoma has treated abortion evenhandedly and that abortion providers and patients are seeking special treatment.  To the contrary, Oklahoma has singled out abortion patients for disfavored treatment in numerous ways.

**ARGUMENT**

**A.     The Police Power is Not Absolute in a Pandemic**

While amici emphasize states' broad authority to protect the public health, amici fail to acknowledge that states' police power is not absolute.  The police power does not provide the government blanket authority to restrict individual liberty during a pandemic.

As the Supreme Court explained in *Jacobson v. Massachusetts*, while the government has authority to "safeguard the public health and the public safety" in an emergency, the state may not—even while exercising that power—impose a restriction that is "a plain, palpable invasion of rights secured by the fundamental law."  197 U.S. 11, 25, 31 (1905).  The state's exercise of its police power is "subject . . . to the condition that no rule prescribed by a state . . . shall contravene the Constitution of the United States, nor infringe any right granted or secured by that instrument."  *Id.* at 25.

*Jacobson* has never been interpreted in the manner amici suggest.  Far from granting states unfettered authority, modern constitutional law treats *Jacobson* as having "balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing disease."  *Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990).  Moreover, the Supreme Court in *Casey* characterized *Jacobson* as "recognizing limits on government power" and cited *Jacobson* in support of its holding that "a State's interest in the protection of life falls short of justifying a plenary override of individual liberty claims."  *Casey*, 505 U.S. at 857.  This interpretation is compelled by *Jacobson* itself, which stated: "A local enactment or regulation, even if based on the acknowledged police powers of a state, must always yield

2

in case of conflict with . . . any right which [the Constitution] gives or secures." *Jacobson*, 197 U.S. at 25.

To be sure, in *Jacobson*, the Court found that the plaintiffs' weak liberty interest in not being vaccinated did not implicate a fundamental constitutional right. *See id.* at 38. Since 1905, however, the jurisprudence of "fundamental rights" has evolved substantially. Specifically, when it comes to abortion, the Supreme Court has repeatedly recognized that the Constitution protects the right "to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." *Casey*, 505 U.S. at 851 (quoting *Eisenstadt v. Baird*, 405 U.S. 438, 453 (1972)). "These matters, involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment." *Id.*

Amici cite cases that have upheld states' police powers. Like *Jacobson*, however, the asserted liberty interests did not approach a fundamental right. *In re Cincinnati Radiation Litig.*, 874 F. Supp. 796, 818-19 (S.D. Ohio 1995) (distinguishing *Jacobson* from non-consensual medical experiments); *cf. Schmerber v. Cal.*, 384 U.S. 757, 772 (1966) (upholding withdrawal of blood sample for alcohol test after car accident, and stating: "That we today hold that the Constitution does not forbid the state's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions or intrusions under other conditions."). None of amici's cases involved (1) a constitutionally protected right (2) that is time sensitive, (3) attended by similarly profound long-term consequences for the

3

entire course of the pregnant person's life, and (4) exercised in consultation with a medical professional who has taken steps to minimize any potential impacts on valid state interests.

### B.     Courts Must Safeguard Constitutional Rights Even During a Crisis

Amici contend that courts lack authority to review states' efforts to combat a public health emergency.  To the contrary, even "under the pressing exigencies of crisis," the Supreme Court has held that courts must resist the "temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit government action." *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 165 (1963).

Of course, in a public health emergency, states may draw upon their police powers to protect the public and eliminate the threat.  But a state's "determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts."  *Lawton v. Steele*, 152 U.S. 133, 137 (1894).  As the Supreme Court and the Tenth Circuit have emphasized: "'To justify the state in . . . interposing its authority in behalf of the public, it must appear—First, that the interests of the public . . .' *require* such interference; and, second, that the means are reasonably *necessary* for the accomplishment of the purpose, and not *unduly oppressive* upon individuals." *Anaya v. Crossroads Managed Care Sys.*, 195 F.3d 584, 591 (10th Cir. 1999) (quoting *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594-95 (1962) (quoting *Lawton*, 152 U.S. at 137)) (emphases added).

In other words, even when a state has legitimate public health aims, courts must weigh "the nature of the menace against which it will protect, the magnitude of the

4

curtailment of individual rights affected and the availability and effectiveness of other less drastic protective measures." *Mid Gulf, Inc. v. Bishop*, 792 F. Supp. 1205, 1214 (D. Kan. 1992) (citing *Goldblatt*, 369 U.S. at 594-95). *Jacobson* recognized this as well. As the Court explained, a state has "an acknowledged power" to protect "against an epidemic," but if a state exercises that power in an "oppressive," or "arbitrary or unreasonable manner," the circumstances may "authorize or compel the courts to interfere for the protection" of individuals' constitutional rights. *Jacobson*, 197 U.S. at 28, 38. Indeed, "it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." *Id.* at 31; *see id.* at 38 ("interference of the courts" is necessary "to prevent wrong and oppression").

Courts have no lesser duty when the rights at stake concern abortion. Just four years ago, the Supreme Court reiterated that, because the right to abortion is fundamental, state intrusions on that right are subject to heightened judicial review. *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309-10 (2016) ("The statement that legislatures, and not courts, must resolve questions of medical uncertainty is also inconsistent with this Court's case law."). Consistent with that obligation, federal courts across the country, including this Court, have refused to abdicate their duty to step in where, as here, states have exercised their police powers to eliminate or unduly burden abortion access.

In addition to the TRO entered by this Court, three other TROs have been issued by district courts restraining states from applying COVID-19 countermeasures in violation of abortion rights. While the Fifth Circuit set aside one such TRO in Texas, it

did so because it found that the district court failed to weigh the government's interest against the constitutional right—not because the district court lacked authority to perform such weighing. *See In re Abbott*, No. 20-50264, slip op. at 23-24 (5th Cir. Apr. 7, 2020). In point of fact, the Fifth Circuit underscored that "the judiciary is not completely sidelined in a public health crisis" and that "a court may inquire whether [the state] has exploited the present crisis as a pretext to target abortion." *Id.* at 26 (citing *Lawton*, 152 U.S. at 137).[1]

## C.     Oklahoma Has Not Treated Abortion Evenhandedly

Finally, amici argue that "the Order treats abortion the same as other elective procedures." Diocese Br. 5; *accord* ACLJ Br. 5. But Oklahoma has not treated abortion evenhandedly:

- Abortion is the only medical care categorically prohibited under the Governor's executive order concerning COVID-19;[2]

---

[1] *Lawton* concerns the police power. *Casey* also contemplates an inquiry into the "purpose or effect" of abortion restrictions. *Casey*, 505 U.S. at 877-78. This Court need not make a finding of pretext, however, in order to conclude that Oklahoma's categorical abortion ban is inconsistent with *Jacobson* and *Casey*.

[2] TRO 4; Office of the Gov. J. Kevin Stitt, Governor Stitt Clarifies Elective Surgeries and Procedures Suspended Under Executive Order (Mar. 27, 2020), https://www.governor.ok.gov/articles/press_releases/governor-stitt-clarifies-elective-surgeries ("Press Release"). Amici state that some other medical procedures are being delayed—but that is not because the law categorically demands it. For example, amici noted that organ transplants have been delayed, but the underlying source indicates this is due to factors such as the vulnerability of organ donees to COVID-19. Alabama Br. 3 (citing Amy Marcus, *Coronavirus Threat Forces Longer Waits for Some Organ-Transplant Patients*, Wall St. Journal (Mar. 25, 2020)).

- Medication abortion is the only medication prohibited under the executive order;[3]

- Abortion patients are the only ones whose physicians have been stripped of the ability to decide, based upon their medical judgment, whether the patient's care is "elective surgery" or a "minor" procedure that must be postponed;[4] and

- Abortion care is the only medical care constrained by a narrow "medical emergency" exception.[5]

Such discrimination is not new. Oklahoma has long singled out abortion providers and patients for disparate treatment. Oklahoma has erected numerous barriers to abortion care that other patients do not face. *See, e.g.*, 63 O.S. § 1-741.1(A) (prohibiting public hospitals from providing most abortions); 63 O.S. § 1-738.2(B) (mandating 72-hour waiting period). Oklahoma has instituted burdensome and medically unnecessary regulatory requirements that apply exclusively to abortion providers. *See* O.A.C. §§ 310:600 (specifying regulations applicable only to abortion facilities). And whereas Oklahoma has expanded cutting-edge medical care such as telemedicine, it has outlawed the use of telemedicine for abortion care. *See* 63 O.S. § 1-729.1 (requiring physician to

---

[3] *See* Office of the Gov. J. Kevin Stitt, Executive Department Fourth Amended Executive Order 2020-07 ¶ 18, at 5 (Mar. 24, 2020), https://www.sos.ok.gov/documents/executive/1919.pdf ("Executive Order"); Press Release.

[4] *See* Executive Order ¶ 18, at 5; Press Release.

[5] *See* Press Release; Motion for Temporary Restraining Order and/or Preliminary Injunction 1 (Doc. No. 16) (describing narrowness of exception).

be present for provision of medication abortion).  Several of Oklahoma's past efforts to impede abortion access have been blocked by courts, and others are currently being challenged.  *See, e.g.*, *Okla. Coal. for Reprod. Justice v. Cline*, 2019 OK 33, 441 P.3d 1145 (striking down Oklahoma's restriction on medication abortion); *Burns v. Cline*, 2016 OK 121, 387 P.3d 348 (striking down Oklahoma's law requiring abortion providers to have medically unnecessary hospital admitting privileges).

More recently, on March 12, 2020, just three days before Oklahoma declared a state of emergency related to COVID-19, the Oklahoma Senate voted to criminally ban all abortions after six weeks of pregnancy.[6]  Governor Kevin Stitt has indicated that he will sign any anti-abortion bill presented to him by the House and Senate.[7]  The circumstances surrounding the Governor's extension of the Executive Order to cover all abortion services strongly suggests that it was driven by political winds, rather than any expert medical judgment: (i) the record does not reflect that Oklahoma's Health Secretary, Mr. Loughridge, recommended a ban on abortion services; (ii) abortion services, and in particular medication abortions, are not covered under the plain language of the Executive Order; and (iii) the March 27 press release banning abortions was not

---

[6] Associated Press, *Oklahoma Senate Votes to Ban Abortions After 6 Weeks*, U.S. News & World Report (Mar. 12, 2020), https://www.usnews.com/news/best-states/oklahoma/articles/2020-03-12/oklahoma-senate-votes-to-ban-abortions-after-6-weeks.

[7] Associated Press, *Oklahoma House OKs Bill to Suspend Abortion Doctor Licenses*, U.S. News & World Report (Feb. 6, 2020), https://www.usnews.com/news/best-states/oklahoma/articles/2020-02-06/oklahoma-house-oks-bill-to-suspend-abortion-doctor-licenses.

8

issued until after Governor Stitt was questioned about the issue at a press conference and Texas instituted a similar ban.

The police power cannot be exercised with such an "unequal hand." *Jew Ho v. Williamson*, 103 F. 10, 23 (C.C.N.D. Cal. 1900) (holding that quarantine of Chinese residents "cannot be continued, by reason of the fact that it is unreasonable, unjust, and oppressive, and therefore contrary to the laws limiting the police powers of the state and municipality in such matters; and, second, that it is discriminating in its character, and is contrary to the provisions of the fourteenth amendment"); *see also Lawton*, 152 U.S. at 137 (exercise of police power may not be "unduly oppressive" and may not "impose unusual and unnecessary restrictions upon lawful occupations"). Yet Oklahoma has done exactly that.

This Court has a proper and essential role under *Jacobson* and *Casey* in ensuring that the state does not exceed the limits of its police power and the Fourteenth Amendment. Rather than provide meaningful assistance to the Court, amici's submissions obscure the legal standards and offer excuses for Oklahoma's choice to exceed those limits here.

Dated: April 10, 2020

Respectfully submitted,

/s/ J. Blake Patton

J. Blake Patton, Oklahoma Bar No. 30673
WALDING & PATTON PLLC
518 Colcord Drive, Suite 100
Oklahoma City, OK 73102
Phone: (405) 605-4440
Fax: None
bpatton@waldingpatton.com

*Attorney for Plaintiffs*

Travis J. Tu*
Kirby Tyrrell*
Ezra Cukor*
Jiaman Wang*
CENTER FOR REPRODUCTIVE RIGHTS
199 Water Street, 22nd Floor
New York, NY 10038
Phone: (917) 637-3627
Fax: (917) 637-3666
tjtu@reprorights.org
ktyrrell@reprorights.org
ecukor@reprorights.org
awang@reprorights.org

Linda C. Goldstein*
Kathryn Barrett*
Samantha Rosa*
Alyssa Clark*
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Phone: (212) 698-3817
Fax: (212) 698-0684
Linda.Goldstein@dechert.com
Kathryn.Barrett@dechert.com
Samantha.Rosa@dechert.com
Alyssa.Clark@dechert.com

*Attorneys for Plaintiffs South Wind Women's
Center LLC, d/b/a Trust Women Oklahoma
City and Dr. Larry A. Burns*

Diana Salgado*
PLANNED PARENTHOOD
FEDERATION OF AMERICA
1110 Vermont Ave., NW, Suite 300
Washington, DC 20005
Phone: (212) 261-4399
Fax: (202) 296-3480
diana.salgado@ppfa.org

*Attorney for Plaintiff Comprehensive Health
of Planned Parenthood Great Plains, Inc.*

*Admitted *Pro Hac Vice*