UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SOUTH WIND WOMEN'S CENTER LLC, d/b/a TRUST WOMEN OKLAHOMA CITY, on behalf of itself, its physicians and staff, and its patients, et al., ) ) ) ) ) ) Plaintiffs, ) ) v. ) ) J. KEVIN STITT in his official capacity ) as Governor of Oklahoma et al., ) ) Defendants. ) | Case No. CIV-20-277-G |

## ORDER

Now before the Court is the Motion for Attorney's Fees (Doc. No. 133) filed regarding counsel for the three Plaintiffs[1] in this matter. Defendants[2] have responded (Doc. No. 135), and Plaintiffs have filed a Reply (Doc. No. 137). As outlined below, the Court finds that Plaintiffs are entitled to an award of reasonable attorney's fees, as well as their

---

[1] Plaintiffs are: South Wind Women's Center LLC, d/b/a Trust Women Oklahoma City, on behalf of itself, its physicians and staff, and its patients; Larry A. Burns, DO, on behalf of himself, his staff, and his patients; and Comprehensive Health of Planned Parenthood Great Plains, Inc., on behalf of itself, its physicians and staff, and its patients.

[2] The named Defendants are: J. Kevin Stitt in his official capacity as Governor of Oklahoma; Michael Hunter in his official capacity as Attorney General of Oklahoma; David Prater in his official capacity as District Attorney for Oklahoma County; Greg Mashburn in his official capacity as District Attorney for Cleveland County; Gary Cox in his official capacity as Oklahoma Commissioner of Health; and Mark Gower in his official capacity as Director of the Oklahoma Department of Emergency Management.

Pursuant to Federal Rule of Civil Procedure 25(d), the following are hereby substituted as defendants in this matter: current Attorney General John M. O'Connor for Michael Hunter; and current Commissioner of Health Lance Frye, MD, for Gary Cox.

uncontested request for nontaxable expenses, but that their request as submitted is excessive in several respects and that the award shall be reduced accordingly.

I.   *Background*

On March 24, 2020, in connection with the ongoing COVID-19 pandemic, the Governor of Oklahoma issued an amended version of Executive Order 2020-07, which provided in Paragraph 18: "Oklahomans and medical providers in Oklahoma shall postpone all elective surgeries, minor medical procedures, and non-emergency dental procedures until April 7, 2020." Compl. Ex. 1, EO 2020-07 (4th Am.) ¶ 18 (Doc. No. 1-1); *see also* Compl. ¶¶ 1-2. On March 27, 2020, the Governor stated in a press release that the postponement referenced in the Executive Order applied to "any type of abortion services as defined in 63 O.S. § 1-730(A)(1) [that] [is] not a medical emergency as defined in 63 O.S. § 1-738.1[A] or otherwise necessary to prevent serious health risks to the unborn child's mother." Compl. Ex. 2, Press Release at 1 (Doc. No. 1-2). On April 1, 2020, the Governor amended the prior Executive Order by extending the postponement of elective surgeries and minor medical procedures "until April 30, 2020." Pls.' Notice Ex. 1, EO 2020-07 (7th Am.) ¶ 18 (Doc. No. 38-1).

Plaintiffs, who are providers of abortion services in Oklahoma, brought this lawsuit on March 30, 2020, pursuant to 42 U.S.C. § 1983, challenging the suspension of abortion services as a violation of due process and equal protection. The following day, Plaintiffs filed a Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. No. 16). Defendants, who are Oklahoma state officials, filed a Response in Opposition (Doc. Nos. 54, 82). A reply and a surreply followed. *See* Doc. Nos. 84, 86, 87, 96.

The Court conducted a telephonic hearing on April 3, 2020, and granted Plaintiffs' Motion in part, evaluating the relevant factors and issuing a written temporary restraining order ("TRO") on April 6, 2020. *See S. Wind Women's Ctr. LLC v. Stitt*, No. CIV-20-277-G, 2020 WL 1677094 (W.D. Okla. Apr. 6, 2020) (Temporary Restraining Order). Although Plaintiffs had requested that enforcement of the Executive Order and Press Release be enjoined as to provision of all surgical and medication abortion services, the TRO instead prohibited enforcement to the following extent:

1. The prohibition on surgical abortions may not be enforced with respect to any patient who will lose her right to lawfully obtain an abortion in Oklahoma on or before the date of expiration of the Executive Order; and
2. The prohibition on medication abortions may not be enforced.

*Id.* at *6 (stating that the TRO will expire on April 20, 2020, absent extension by the Court).

Defendants immediately filed an interlocutory appeal to challenge the TRO, moving the Tenth Circuit Court of Appeals to expedite their appeal and also to stay the TRO. Plaintiffs were ordered to respond to the appellate motions within one and two days, respectively. *See* Pls.' Mem. (Doc. No. 133-1) at 9. On April 13, 2020, the Tenth Circuit granted Defendants' motion to expedite but dismissed Defendants' appeal for lack of jurisdiction and denied as moot the motion to stay the TRO. *See S. Wind Women's Ctr. LLC v. Stitt*, 808 F. App'x 677, 681 (10th Cir. 2020).

On April 16, 2020, the Governor issued Second Amended Executive Order No. 2020-13, which further revised the directive regarding elective surgeries and minor medical procedures. *See* Defs.' Suppl. Br. Ex. 1, EO 2020-13 (2nd Am.) ¶ 22 (Doc. No. 102-1). On that same date, the Governor issued Executive Memorandum No. 2020-02, which

provided guidance to "be [used] when elective surgeries are performed." Defs.' Suppl. Br. Ex. 2, EM 2020-02, at 2 (Doc. No. 102-2). And on April 20, 2020, the Governor issued Third Amended Executive Order No. 2020-13, which amended the relevant portion of the Second Amended Executive Order. *See* Defs.' Notice Ex. 1, EO 2020-13 (3rd Am.) ¶ 22 (Doc. No. 106-1).

Accordingly, as of April 20, 2020, the effect of these Executive Orders, the Press Release, and the Executive Memorandum, absent Court intervention, was "to prevent abortion providers statewide from lawfully performing an elective surgical abortion until: (a) April 24, 2020, for abortions where delay until April 30, 2020, or thereafter would make surgical abortion unavailable under Oklahoma law; or (b) April 30, 2020, for abortions where delay until that date or thereafter would not make surgical abortion unavailable under Oklahoma law. Further, the effect . . . , absent any Court intervention, [was] to prevent abortion providers statewide from lawfully performing an elective medication abortion until April 30, 2020." *S. Wind Women's Ctr. LLC v. Stitt*, 455 F. Supp. 3d 1219, 1226 (W.D. Okla. 2020) (Preliminary Injunction) (footnote omitted).

On April 20, 2020, the Court held a telephonic hearing regarding Plaintiffs' request for issuance of a preliminary injunction. *See* Doc. No. 113. That same date, the Court issued a Preliminary Injunction, again ordering that some restrictions in the Executive Orders may be enforced but some may not:

> 1. Effective[] immediately, the prohibition on surgical abortions may not be enforced with respect to any patient for whom a delay in receipt of the surgical abortion to April 24, 2020, would render elective abortion unavailable to that patient under Oklahoma law; and

> 2. Effective Friday, April 24, 2020, the prohibition on surgical abortions may not be enforced as to any patient; and
>
> 3. Effective[] immediately, the prohibition on medication abortions may not be enforced as to any patient.

*S. Wind Women's Ctr.*, 455 F. Supp. 3d at 1232 (stating that the terms of the Preliminary Injunction would remain in place until further order of the Court).

Defendants filed a second interlocutory appeal, along with motions seeking a stay of the Preliminary Injunction. Plaintiffs timely responded to the motions within two days. Pls.' Mem. at 12. On April 27, 2020, the Tenth Circuit denied Defendants' motions but issued a briefing schedule, asking the parties to address whether the appeal was now moot. *Id.* On August 18, 2020, following briefing, the Tenth Circuit concluded that Defendants' appeal was moot due to the expiration of the State's remaining abortion restrictions on April 30, 2020. *See S. Wind Women's Ctr. LLC v. Stitt*, 823 F. App'x 677, 680 (10th Cir. 2020). The appellate court rejected Defendants' request to vacate this Court's Preliminary Injunction, holding that it was instead "appropriate to follow the usual practice" and leave the injunction order undisturbed. *Id.* at 682.

On October 8, 2020, upon stipulation by the parties, the Court deemed this matter dismissed without prejudice and entered judgment. *See* Doc. Nos. 126, 127.

II.     *Attorney's Fee Awards Under 42 U.S.C. § 1988(b)*

Plaintiffs' cited statute, 42 U.S.C. § 1988, "allows the award of 'a reasonable attorney's fee' to 'the prevailing party' in various kinds of civil rights cases, including suits brought under § 1983." *Fox v. Vice*, 563 U.S. 826, 832-33 (2011) (quoting 42 U.S.C. § 1988(b)). "When a plaintiff succeeds in remedying a civil rights violation . . . he serves

5

'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'" *Id.* at 833 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)).

> [P]laintiffs may receive fees under § 1988 even if they are not victorious on every claim. A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That "result is what matters," we explained in *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983): A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if "the plaintiff failed to prevail on every contention." *Ibid.*

*Fox*, 563 U.S. at 834.

"Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, but the judge's discretion is not unlimited." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (citation omitted) (explaining that the court must "provide a reasonably specific explanation" of its fee determination). The fee applicant must "submit appropriate documentation to meet 'the burden of establishing entitlement to an award.'" *Fox*, 563 U.S. at 838 (quoting *Hensley*, 461 U.S. at 437). But "the determination of fees should not result in a second major litigation," and trial courts "should not . . . become green-eyeshade accountants." *Id.* (internal quotation marks omitted). Accordingly, "trial courts may take into account their overall sense of a suit" and "may use estimates in calculating and allocating an attorney's time." *Id.*

### III.  Plaintiffs' Request for Attorney's Fees

Plaintiffs' Motion initially requested $548,143.75 in attorney's fees for 1658.69 hours of work performed. *See* Pls.' Mot. at 1-2; Pls.' Mem. at 20, 22, 23-24 (presenting

6

this figure as the "lodestar" of number of hours reasonably expended multiplied by a reasonable hourly rate); *see also City of Burlington v. Dague*, 505 U.S. 557, 559, 562 (1992) (discussing the lodestar calculation). In support of their Motion, Plaintiffs have presented affidavits and timesheets from their counsel, as well as affidavits from two local attorneys. *See Fox*, 563 U.S. at 838; LCvR 54.2.

During briefing, Plaintiffs voluntarily recalculated and reduced this fee request by $25,089.00 to exclude 95.7 hours of work and include billing by only their three main attorneys as to "internal case conferences, court hearings, and conferences with defense counsel." Pls.' Reply at 11 & n.9; *see also* Pls.' Reply Ex. 1 (Doc. No. 137-1) at 2-4. The Court therefore relies upon Plaintiffs' reduced proposed award of $523,054.75 as the starting point for considering their Motion. *See* Pls.' Reply at 11.

Defendants have set forth various objections to Plaintiffs' fee request, which the Court considers in turn.[3]

### A. Plaintiffs' Limited Success

A plaintiff "prevails" for purposes of 42 U.S.C. § 1988(b) "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying

---

[3] Defendants do not dispute that the hourly rates claimed by Plaintiffs' counsel are reasonable or that Plaintiffs are entitled to fees incurred for work performed on the two interlocutory appeals. *See* Pls.' Mem. at 20, 22, 28. *See generally Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("'[R]easonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *In re Natural Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1024 (10th Cir. 2017) ("[A] district court [may] award attorney fees related to an interlocutory appeal to parties who prevail on interlocutory review in this court, and who subsequently become prevailing parties under Title VII or another fee-shifting provision at the conclusion of merits proceedings." (internal quotation marks omitted)).

the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). There is no serious dispute that Plaintiffs are the "prevailing party" for purposes of § 1988(b). *See id.* at 109 ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." (internal quotation marks omitted)); *Kan. Jud. Watch v. Stout*, 653 F.3d 1230, 1238 (10th Cir. 2011) (explaining that a preliminary injunction can serve as the basis for a prevailing-party fee award where the injunction "provide[s] at least some relief on the merits of the plaintiff's claim(s)"—i.e., where the injunction "(a) affords relief sought in the plaintiff's complaint and (b) represents an unambiguous indication of probable success on the merits").

Having concluded that Plaintiffs have prevailed, it remains for the Court "to determine what fee is 'reasonable.'" *Hensley*, 461 U.S. at 433. "[T]he 'reasonable fee' inquiry is not as 'generous a formulation' as the 'prevailing party' inquiry." *Sinajini v. Bd. of Educ. of San Juan Cnty. Sch. Dist.*, 53 F. App'x 31, 35-36 (10th Cir. 2002) (alteration omitted) (quoting *Farrar*, 506 U.S. at 114). The Court considers various factors in making this inquiry, "including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434; *see id.* at 429-31, 434-37.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

8

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.
>
> . . . .
>
> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

*Id.* at 435-37 (footnote and citation omitted).

Defendants argue that Plaintiffs achieved only "partial success," in that the Court enjoined enforcement of the State's emergency mandates as to some, but not all, of the restrictions imposed. Thus, Defendants argue, the Court should assess a 50% reduction to Plaintiffs' lodestar calculation prior to any additional reductions. *See* Defs.' Resp. at 11-13. Plaintiffs reply that no such reduction is warranted but, if one is applied, it should be no more than 5-10% of the fee award. *See* Pls.' Reply at 8.

Though they did not obtain the full relief sought, Plaintiffs did not achieve a merely "technical" or formal victory. *See Farrar*, 506 U.S. at 113-15. While the Court's Orders gave credence to the State's broad power to respond to a public health emergency, they also fulfilled Plaintiffs' purpose of protecting their civil rights against specific unwarranted exercises of that power. *See S. Wind Women's Ctr.*, 2020 WL 1677094, at *6; *S. Wind Women's Ctr.*, 455 F. Supp. 3d at 1232.

9

Having "considered the relationship between the amount of the fee awarded and the results obtained," the Court finds that a 15% adjustment is sufficient and appropriate "in light of the time necessarily devoted to the litigation as a whole and the general overall success of the plaintiffs." *Hensley*, 461 U.S. at 437; *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995). The Court notes that while Plaintiffs initially challenged the State's emergency mandates to the full extent that they impeded abortion services, following the entry of the April 6, 2020 TRO Plaintiffs largely confined their arguments to sustaining the status quo post the TRO. Therefore, the Court reduces the requested fee award by 15 percent, or $78,458.21, resulting in a potential award of $444,596.54.

### B. The Duration of the Case

Defendants next argue that Plaintiffs' fee request is excessive given the abbreviated nature of both the district-court and appellate-court proceedings. Defendants contrast this case with other abortion-restriction challenges and argue that granting the requested fee would amount to an unfair windfall to Plaintiffs. *See* Defs.' Resp. at 13-16.

Defendants are correct that the Court may consider "the customary fee" and awards ordered in "similar cases" in assessing the reasonableness of a fee award. *Hensley*, 461 U.S. at 430 n.3. The comparators selected by Defendants—cases that involve abortion restrictions in general, rather than restrictions imposed for the purpose of addressing the Covid-19 pandemic—are not usefully similar, however. Regardless of any party's underlying motivations, the actual question presented in this case was not so much about abortion—after all, counsel agreed for purposes of the case that access to abortion was a fundamental right protected by the Fourteenth Amendment—as it was the extent to which

10

a state may impede upon civil liberties during a health emergency. Neither Plaintiffs nor Defendants point the Court to fee awards in any of the other civil rights challenges made to restrictions enacted or ordered as part of a state's response to Covid-19. The Court is aware of one similar matter: an agreed award of $451,351.60 "in satisfaction of all claims for costs and attorneys' fees" to parties who challenged Alabama's emergency orders restricting the provision of abortion services "during the COVID-19 pandemic." Order at 2, *Robinson v. Marshall*, No. 2:19-cv-00365 (M.D. Ala. Aug. 12, 2020), ECF No. 184. That award is consistent with the request made by Plaintiffs in this case.

Defendants' broad attack on Plaintiffs' fee request as being excessive in relation to other cases fails to show the type of comparison needed to meaningfully "challeng[e] the accuracy and reasonableness of the hours charged." *Blum*, 465 U.S. at 892 n.5; *cf. Hensley*, 461 U.S. at 430 n.3 (noting that the court may consider "time limitations" and "the novelty and difficulty of the questions" in determining the amount of a fee award). No blanket reduction is warranted on this basis.

### C. Additional "Parallel" Litigation

Defendants contend that Plaintiffs "copied" their arguments and authority from filings submitted in a lawsuit initiated in Texas one week earlier than this lawsuit and that Plaintiffs' request therefore should be reduced as to hours claimed in connection with filings here. Specifically, Defendants argue that Plaintiffs used, "nearly verbatim," language that had been used by the plaintiffs in the Texas litigation, citing in particular the jointly filed Complaint and Motion for Temporary Restraining Order and/or Preliminary Injunction and many of the supporting declarations presented in this Court. *See* Defs.'

11

Resp. at 16-21 (citing examples). Defendants therefore request a significant reduction in Plaintiffs' time claimed through March 31, 2020, the date Plaintiffs' Motion was filed.

The Court finds this objection to be well taken. While drafting such documents is not purely clerical in nature, and the documents had to be tailored to the particular facts of this case, there is considerable overlap seen in Defendants' cited examples that "should have saved significant time in drafting" the Complaint, the Motion, and declarations. *Catholic Benefits Ass'n LCA v. Azar*, Nos. CIV-14-240-R, CIV-14-685-R, 2018 WL 3876615, at *12 (W.D. Okla. Aug. 15, 2018). The relevant time entries therefore reflect excessive time spent on items largely duplicative of those in other litigation, particularly with regard to the attorneys' work on supporting declarations. *See, e.g.*, Cukor Timesheet (Doc. No. 133-7) at 2 (citing 18.9 hours spent working on a declaration that repeated portions of the witness's statements already filed in the Texas case).

The supporting records reflect 332.6 hours spent on this matter by Plaintiffs' attorneys from March 25, 2020, through March 31, 2020, totaling $103,986.50 in fees. *See* Tu Timesheet (Doc. No. 133-4) at 2; Cukor Timesheet at 2; Tyrrell Timesheet (Doc. No. 133-9) at 2; Goldstein Timesheet (Doc. No. 133-12) at 2; Barrett Timesheet (Doc. No. 133-15) at 2; Rosa Timesheet (Doc. No. 133-17) at 2-3; Salgado Timesheet (Doc. No. 133-20) at 2; Patton Timesheet (Doc. No. 133-25) at 2. Plaintiffs already have reduced the March 25-31, 2020 period of the fee request by $7297.50 (eliminating 27.9 hours), resulting in a request of $96,689.00. *See supra*; Pls.' Reply at 11 & n.9; Pls.' Reply Ex. 1, at 3. The Court further reduces the fee award by $29,006.70 (30% of this portion) to account for the excess time spent on filings submitted in this Court through March 31, 2020.

### *D. Overstaffing*

Defendants argue that Plaintiffs' counsel "inflated their fees by overstaffing this case." Defs.' Resp. at 21. They first point to Plaintiffs' use of nine attorneys and advise that, seeing as how Defendants handled this case with three attorneys, "one attorney for each Plaintiff, plus local counsel" would have been reasonable. *Id.* at 22; *see id.* at 21-23.

The retention of counsel by three discrete nongovernmental plaintiffs to initiate and pursue a civil rights lawsuit invokes different practical and logistical concerns than a state attorney general's representation of five state officials in their official capacities. Thus, the mere facts that Plaintiffs used nine attorneys while Defendants used three does not indicate that Plaintiffs' staffing was excessive, particularly given the simultaneous trial-court and appellate-court proceedings that were involved. *Cf.* Tu Decl. ¶ 62 (Doc. No. 133-2) (explaining that "this case required significant time and . . . labor by multiple attorneys for several reasons," including its "complex nature and expedited schedule," repeated modifications to the State's emergency orders, and the stay-at-home orders and other pandemic restrictions then in place).

Defendants additionally argue that Plaintiffs' counsel inefficiently duplicated some tasks, including reviewing documents, attending hearings, and communicating with each other. *See* Defs.' Resp. at 23-15. As noted above, however, Plaintiffs already have voluntarily reduced their request by $25,089 to account for duplicative billing on certain of these items. Having reviewed the cited time entries, the Court finds that the claimed hours are reasonable and that further reduction is unnecessary.

### E. Failure to Reasonably Delegate Tasks

Defendants next object that Plaintiffs failed to properly allocate tasks between senior and junior attorneys. *See* Defs.' Resp. at 25-27 (arguing that Plaintiffs' bills reflect "that half their district court work and over half their appellate work was handled by attorneys billing at partner rates even though there were five attorneys available at lower rates"). Defendants specifically point to certain time entries submitted by Plaintiffs' attorneys Goldstein, Lambiase, Tu, and Salgado. *See id.*

With one exception, the Court rejects this argument. "[A]ssigning more work to partners than associates is not per se unreasonable," and a client may want a partner's "particular attention and experience" in a complex case. *Catholic Benefits Ass'n*, 2018 WL 3876615, at *10. "Senior attorneys are also often able to complete certain tasks more cost-effectively, despite their higher rates, based on experience." *Id.* In addition, Plaintiffs already have exercised billing judgment by omitting hours worked and opting not to seek compensation for numerous attorneys, paralegals, and staff who worked on this case. *See* Tu Decl. ¶¶ 54, 56, 58, 60; Goldstein Decl. ¶¶ 6, 8 (Doc. No. 133-10); Salgado Decl. ¶¶ 17-18 (Doc. No. 133-18); *cf. Awad v. Ziriax*, No. CIV-10-1186-M, 2014 WL 1660650, at *2 (W.D. Okla. Apr. 25, 2014) (declining to reduce the prevailing party's hours where there were "complex issues briefed" and the party's counsel already had made "significant deductions of hours from the fee application").

With respect to the billing of Ms. Goldstein, however, the records reflect that in her claimed 319.1 hours of work, she engaged in a significant number of tasks that appear to have been assignable to associates at lower billing rates. For example, she billed 168.5

14

hours in the first three weeks on this case—more than that billed by either of her associate attorneys. *See* Goldstein Timesheet at 2-4. The Court finds that a reduction of her total hours by 25% (or 79.8 hours) is required, which reduces the fee award by $35,910.00 (79.8 hours x $450/hour billing rate).

### F. Block Billing

Block billing is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (internal quotation marks omitted).

Defendants assert that certain of Plaintiffs' attorneys improperly block billed to some extent, by failing to "record[] their time in separate entries," and that such vague time entries should be disregarded as inadequate to evidence the reasonableness of the work performed. Defs.' Resp. at 28. Defendants' contention is largely baseless, as the records submitted by Plaintiffs are generally detailed, with the majority of the attorneys' time "allotted to specific tasks." *Robinson*, 160 F.3d at 1285. While there are a few instances where an attorney grouped two or more tasks into a single time entry, the records "sufficiently allow[] the court to determine the time allotted by [Plaintiffs'] attorneys to specific tasks and the reasonableness of that time." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000). The Court declines to reduce the fee award on this basis. *See id.*; *see also Crumpacker v. Kan., Dep't of Human Res.*, 474 F.3d 747, 757 (10th Cir. 2007) ("The law does not require the district court to reduce its fee award where it finds no difficulty in evaluating the propriety of an attorney's billing.").

### G. Fees on Fees

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application," but "not every hour expended on a fee request is necessarily reasonable or compensable." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986). Defendants challenge Plaintiffs' request for "fees on fees": that is the 184.5 hours, totaling $61,683.50, for the time spent preparing their attorney's fees request. *See* Pls.' Mem. at 22-24. According to Defendants, "[a]ny private client would be shocked to receive such a bill simply for being billed." Defs.' Resp. at 30. Defendants claim that the request for fees associated with counsel's efforts to exercise billing judgment amounts to Plaintiffs "seek[ing] a reward for their lack of diligence in managing their own bills." *Id.* at 31.

In arguing that Plaintiffs' fees-on-fees compensation should be equal to no more than 10% of the fee award for work done on the merits, Defendants state:

> Although the Tenth Circuit has never addressed the proper proportion of fees on fees to the fee award, *see Valdez v. Squier*, 676 F.3d 935, 950 (10th Cir. 2012), the general rule applied in other circuits is that fees on fees should be no more than 10% of the fee award itself. *See Ustrak*[*v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988)]; *see also Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 411 (7th Cir. 1999); *Joung v. Oral Prosthetics Lab., LLC*, No. 1:15CV973, 2016 WL 5902932, at *2 (E.D. Va. Oct. 11, 2016).

Defs.' Resp. at 30. Defendants' description of these authorities is misleading. In *Valdez*, the Tenth Circuit upheld an award of attorney's fees and declined to reach the defendant's argument that the fees-on-fees aspect of the award was disproportionate. *See Valdez*, 676 F.3d at 941-42, 950. And Defendants' cited cases do not support the proposition that there is a "general rule" of a ten-percent maximum of "the fee award" applied in "other circuits."

16

Rather, each of these decisions addresses the reasonableness of *hours* allowed for the specific fee petition, and they do not purport to establish a preferred ratio for either hours or dollars. *See Ustrak*, 851 F.2d at 986, 987-88 (disallowing two-thirds of hours worked on fee petition, with no discussion of the corresponding fee amount); *Uphoff*, 176 F.3d at 404, 411 (finding the district court's reduction for fees-on-fees to 1.6 hours was "reasonably related" to the "just under 100 hours" spent litigating the merits of the case," with no mention of corresponding award amount); *Joung*, 2016 WL 5902932, at *1, *2 (reducing fees-on-fees hours by roughly two-thirds from the requested "nearly 40% of the hours billed"). The distinction between hours and dollars is important, as is accurately characterizing the relevant authorities.

Having reviewed the records, the Court does find that the work performed on the fee application is excessive as submitted. *See* Lambiase Timesheet (Doc. No. 133-23) at 3 (submitting 57.5 hours of work at $375 an hour); Cukor Timesheet at 5-6 (submitting 54 hours of work at $275 an hour). Accordingly, the Court reduces the time for these attorneys to 15 hours apiece for the fee application, resulting in a reduction to the fee award of $26,662.50.

## IV. Plaintiffs' Request for Expenses

Plaintiffs additionally request an award of $2176.99 for nontaxable expenses related to this litigation. *See* Pls.' Mem. at 28-29; Expense Statements (Doc. Nos. 133-5, 133-13, 133-21, 133-26). "Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorney's fee award if such expenses are usually billed in addition to the attorney's hourly rate." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243,

1257 (10th Cir. 1998). Defendants offer no objection to this request, and the Court finds that the amount is reasonable and supported by Plaintiffs' documentation. Accordingly, this request is GRANTED.

## CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Attorney's Fees (Doc. No. 133) is GRANTED IN PART and DENIED IN PART. The Court finds that an award to Plaintiffs of $355,734.33 is reasonable under the circumstances of this case, comprising $353,017.34 in attorney's fees and $2716.99 in nontaxable expenses.

IT IS SO ORDERED this 23rd day of August, 2021.

_____
CHARLES B. GOODWIN
United States District Judge